RECEIVED
USDC, WESTERN DISTRICT OF LA.
TONY R. MOORE, CLERK
DATE 7/6/10
BY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **KERRY V. BROWN, SR.** | **CIVIL ACTION NO. 09-955** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **CITY OF LAKE PROVIDENCE** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 21] filed by the City of Lake Providence ("the City"). For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of an incident between Officers Mike Meadows ("Meadows") and Lee Antwine ("Antwine") of the Lake Providence Police Department (collectively "the Officers") and Plaintiff Kerry V. Brown, Sr. ("Brown").

Prior to the incident, Brown worked as a garbage truck driver for the City. [Doc. No. 21, Exhibit A]. On March 22, 2009, the Officers were attempting to disperse a crowd at the intersection of Third Street and Charles D. Jones Boulevard in Lake Providence, Louisiana. [Doc. No. 21, Exhibit B]. The intersection has a history of large crowd gatherings, fights, and shootings. *Id.* Brown, presumably off work, was on a bicycle next to approximately eighty (80) people gathered near the intersection. Brown saw Meadows and knew he was there to disperse the crowd. [Doc. No. 21, Exhibit A]. The Officers were the only law enforcement personnel in the area.

Antwine states that, in response to a group of females fighting, he gave three (3) verbal orders over his police cruiser's PA system for the crowd to disperse. [Doc. No. 21, Exhibit B]. Brown

states that no one was fighting and that he did not hear Antwine's alleged orders. [Doc. No. 21, Exhibit A]. After the crowd allegedly ignored Antwine's orders, Meadows deployed a canister of tear gas into the crowd. [Doc. No. 21, Exhibit B]. The cannister bounced into the left leg of Brown's shorts causing first and second degree burns. [Doc. No. 21, Exhibit A]. No one was arrested at the scene of the incident. *Id.*

On June 11, 2009, Brown filed suit against the City, seeking to recover damages and attorney's fees. Brown brought claims under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments of the United States Constitution and pendant state law claims under article 1, sections 2 and 5, of the Louisiana State Constitution and Louisiana Civil Code article 2315. On October 8, 2009, Brown amended his Complaint to add what the City assumes are claims for workplace harassment and retaliation under 42 U.S.C. § 2000e-3. *Id.* Brown alleges that, after he filed suit, the City demoted him to working as a street cleaner and to part-time status and also suspended him from work for two (2) weeks. [Doc. No. 11].

On May 21, 2010, the City filed a Motion for Summary Judgment. [Doc. No. 21]. On June 7, 2010, Brown filed a memorandum in opposition. [Doc. No. 25].

II.   **LAW AND ANALYSIS**

   A.   **Summary Judgment Standard**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*,

954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

**B.     42 U.S.C. § 2000e-3**

Brown alleges in his Amended Complaint that:

> The Plaintiff has been singled out in a pattern of harassment for retaliation for the filing of his lawsuit in federal district court. The defendant has persisted in a pattern of harassment, including removing the plaintiff from his job and demoting him from being the driver of a garbage truck to a less desirable position as a street cleaner, suspending plaintiff for two (2) weeks and further demoting the plaintiff to a part-time status. The plaintiff experienced no work related issues prior to filing his lawsuit.

[Doc. No. 11].

The City assumes that the Amended Complaint states claims for workplace harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3 ("Title VII").[1] The

---

[1] The Title VII retaliation provision states, in pertinent part:

(a) Discrimination for making charges, testifying, assisting, or participating in

3

City asserts that such claims should be dismissed because Brown cannot show that the City's proffered reasons for taking adverse employment action against him are pretextual. In his memorandum in opposition to the Motion for Summary Judgment, Brown does not contend that he brings a Title VII retaliation claim. Brown argues only that "[t]he defendants have also introduced work records of the plaintiff, which are not relevant to the issues at hand."[2] [Doc. No. 25].

In order to sustain a claim under § 2000e-3, Brown must show that he:

> engaged in protected conduct, that [he] was thereafter subjected to an adverse employment action, and that such adverse employment action was motivated by animus inspired by the protected conduct. If the plaintiff makes a prima facie case, the burden shifts to the employer to provide a legitimate, nonretaliatory reason for the adverse employment action. Should the employer provide a permissible rationale, the plaintiff then shoulders the ultimate burden of proving that the employer's proffered rationale was pretextual and that engaging in the protected activity was the but-for cause of the adverse employment action (*i.e.*, the employer actually retaliated against the employee).

*Chaney v. New Orleans Public Facility Mgmt., Inc.*, 179 F.3d 164, 167 (5th Cir. 1999) (citations omitted).

A Title VII retaliation claim does not cover an employee filing a claim under 42 U.S.C. §

---

> enforcement proceedings
>
> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing, under [among other things, 42 U.S.C. § 2000e-2].

Section 2000e-2 provides that it is an unlawful employment practice for an employer to discriminate against an employee because of the employee's race, color, religion, sex, or national origin.

[2]Neither party addresses whether Brown has alleged a First Amendment retaliation claim, pursuant to 42 U.S.C. § 1983. *See Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220-21 (5th Cir. 1999). Therefore, the Court does not analyze whether such a claim would survive summary judgment.

4

1983 against a government employer for violations of the employee's Fourth and Fourteenth Amendment rights. *See* 42 U.S.C. §§ 2000e-2 & 2000e-3. However, even assuming Brown could state a *prima facie* Title VII retaliation claim, the City offers nonretaliatory reasons for demoting and suspending him. The City offers evidence that Brown was cited for failing to wear his work uniform, disciplined for arguing on the job, and suspended for standing around and not working. [Doc. No. 21, Exhibits A & E]. Brown fails to offer evidence or even argue that the City's proffered reasons for demoting and suspending him were pretextual.

To the extent Brown's Amended Complaint alleges claims under 42 U.S.C. § 2000e-3, those claims are DISMISSED WITH PREJUDICE.

### C.    42 U.S.C. § 1983

The City asserts that Brown's claims under 42 U.S.C. § 1983 should be dismissed because the Officers' conduct did not violate Brown's rights under the Fourth and Fourteenth Amendments of the United States Constitution. The City also asserts that the alleged violations of Brown's rights were not caused by the City's policies or customs.

The Court need not address whether the Officers violated Brown's rights under the Fourth and Fourteenth Amendments because Brown fails to offer evidence that the Officers' conduct was caused by the City's policies or customs.[3] "Municipal liability for civil rights violations under § 1983 is based on causation, not *respondeat superior*." *Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 548 (5th Cir. 2008) (citing *Monell v. New York Dep't. of Soc. Serv.*, 436 U.S. 658, 692 (1978)). "The fact that a tortfeasor is an employee or an agent of a municipality is therefore not sufficient for city

---

[3]This holding is not applicable to Brown's state law claims. *See* LA. CIV. CODE art. 2320 (imposing vicarious liability upon a municipality for the acts of its employees); *see also Lewis v. Goodie*, 798 F.Supp. 382, 391 (W.D. La. 1992).

liability to attach; the municipality must cause the . . . tort, which occurs 'when execution of a government's policy or custom, whether by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Id.* (quoting *Monell*, 436 U.S. at 694). To satisfy the policy or custom element, a plaintiff must offer evidence of:

> a policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. Alternatively, official policy is a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Finally, a final decisionmaker's adoption of a course of action tailored to a particular situation and not intended to control decisions in later situations may, in some circumstances, give rise to municipal liability under § 1983.

*Sanders-Burns v. City of Plano*, 594 F.3d 366, 380-81 (5th Cir. 2010) (internal quotations and citations omitted). Furthermore, the policy or custom must be the "moving force" which causes the Constitutional violation to occur. *Monell*, 436 U.S. at 694.

In his opposition memorandum, Brown does not cite § 1983 nor address his claims under the statute. Instead, Brown briefs the Court on the viability of his claims under Louisiana Civil Code article 2315. However, in his statement of material facts attached to his memorandum in opposition, Brown cites the deposition of Antwine for the argument that "[t]he Lake Providence Police Department has a policy in which they deploy tear gas for crowd control at this location without the report of any crime."[4] [Doc. No. 25-1]. Antwine's deposition testimony does not support this argument.

---

[4]Brown also cites the deposition of Antwine for the argument that "[t]he Lake Providence Police Department has been trained to throw tear gas." [Doc. No. 25-1]. However, Brown does not offer evidence that a lack of proper training caused violations of Brown's Fourth and Fourteenth Amendment rights.

6

In his deposition, Antwine stated that tear gas is kept in police cruisers for crowd control; that the use of tear gas is "not a regular component . . . [or] something that we go out and throw on a daily basis," and that he had seen it used only once. [Doc. No. 21, Exhibit B]. Antwine did not state or imply that the Officers were trained or ordered to deploy tear gas when a crime had not been committed or that the City's policies or customs otherwise caused violations of Brown's rights. *See id.* Other than his conclusory allegation, Brown has otherwise failed to offer evidence that the City had a policy or custom of deploying tear gas when no crime was being committed or that such a policy or custom, if one existed, caused violations of his rights.

Brown's claims under § 1983 for violations of his Fourth and Fourteenth Amendment rights are DISMISSED WITH PREJUDICE.

### D. State Law Claims

The City also asserts that Brown's claims under article 1, sections 2 and 5, of the Louisiana State Constitution and Louisiana Civil Code article 2315 should be dismissed. Having dismissed all claims over which this Court has original jurisdiction and after determining the City has not adequately briefed why Brown's state law claims should be dismissed, the Court declines to exercise supplemental jurisdiction over Brown's state law claims. *See* 28 U.S.C. § 1367. Accordingly, Brown's state law claims are DISMISSED WITHOUT PREJUDICE.

### III. CONCLUSION

For the foregoing reasons, Brown's Motion for Summary Judgment [Doc. No. 21] is GRANTED IN PART and DENIED IN PART.

To the extent Brown asserts claims under 42 U.S.C. § 2000e-3, those claims are DISMISSED WITH PREJUDICE. Brown's claims under 42 U.S.C. § 1983 are also DISMISSED WITH

7

PREJUDICE.

Brown's state law claims under article 1, sections 2 and 5 of the Louisiana State Constitution and Louisiana Civil Code article 2315 are DISMISSED WITHOUT PREJUDICE.

MONROE, LOUISIANA, this 6 day of July, 2010.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE